Smith, J.
I will state the several acts on the subject, making such remarks on each as occur in stating it, in order that I may more briefly and clearly make the application of them, on a view of the whole connected.
He then stated in a particular manner the laws which had been cited by the plaintiffs’ counsel in the beginning of their argument, and proceeded thus :
The meaning of the proviso in the 2d section of the act of 13th April 1782, is obvious. There being then so many auctioneers, and every person meaning to employ any of them, *having his choice, there would be a competition of course; and where the property to be sold was large, or [*344 where the articles were of high price, some of them might be willing to take a less commission than that the law would allow them; none of them however were obliged to take less. No argument can be deduced from this provision on the present occasion; because it is not found, nor even alleged, that John Chaloner agreed to receive less than the recompence allowed by law, for his services in the premises.
It is stated, and has been admitted in the argument, that John Chaloner was appointed, and the bond in question given under the act of assembly of 27th March 1790. And the question, whether it extends to the employers of the auctioneer against his bail, the auctioneer having made default by not paying the plaintiff the sum stated in the case, or verdict, we must now decide.
It was laid down by the last counsel in behalf of the defendants, as a general rule, that as against sureties, bonds are not to be extended beyond the letter. No authority was cited in support of the rule; but Justice Buller lays down the same rule in 2 Term Rep. 370. In strictness, the term surety in a bond is not known in law. All who bind themselves to pay are equally obligors. But what is the letter of the bond on which we are to decide ? “That if the said John Chaloner should well “and faithfully execute the aforesaid office of auctioneer accord *344 “ing to law, and should from time to time, well and truly ,ac- “ count for all public monies which .should come to his hands, “and pay the same into the treasury of this state, agreeably to “the directions of the several acts of assembly of this common- “ wealth, which relate to auctions and auctioneers, then,” &c.
What are the duties of the auctioneers required by the several acts of assembly ? Selling at auction, collecting the money, and paying over the same without loss or waste, and paying over I per cent, to the state. For the performance of these duties they receive their recompence. These are the terms and payments required by the act of 27th March 1790, according to which the bond in question was given, and the several acts of general assembly, to which that act was a supplement.
The meaning of the expressions, that as against sureties, bonds are not to be extended beyond the letter, is plainly this, that the surety is not liable further than the true intention and meaning of the parties, expressed in the instrument, and the legal construction of the words used make him liable. But so far he is liable, and the principal is no further answerable. Both were bound to know the laws, according to which the bond was given. * There is a case, not cited by the counsel on either *345] side, jn which the liability of both is carried much further than is necessary to carry it in this instance. It is carried according to the true intent, meaning and understanding of both, beyond the strict letter of the condition by two juries, (against the bail only, and by the first jury seemingly against the opinion of the court,) by the Lord Keeper and by the House of Lords. It is Machen and Fortune v. Stanyon. 1 Bro. ParL. Cas. 87.
Take a view of all the offices created by the legislature of Pennsylvania, as well before as since the revolution, and we must lay it down as a general rule, that where the officer in offices created by the acts, is necessarily entrusted with the money of individuals, or to perform a duty which he alone can perform, in the due performance of which individuals are interested, the wisdom and justice of the legislature have been manifested in prescribing that the officer shall give bond with sufficient sureties for the faithful payment of those monies, for the faithful performance of those duties; as in the cases of sheriffs, coroners, administrators, in some instances executors though ajrpointed by testators, recorders of deeds, registers for the probate of wills, land officers, surveyors, &c. All such bonds are declared to be, to and for the use of, and in trust for the persons concerned, and that the benefit thereof shall be extended from time to time for the relief and advantage of the party grieved by the misfeasance or nonfeasance of the officers. 1 St. Laws 103, § 14.
It has been contended, that although the sale must be made by the auctioneers, yet the owner may collect the money. The uniform practice under an act affords always a powerful help, and generally a sure guide in the exposition of it, where the *345 words are doubtful. The uniform practice under these acts has been, that the auctioneer has collected the money and .paid it over. Indeed, how could-the owner of the goods, sold at auction under -the law, support an action against the buyer for goods sold and delivered ? It is said by the defendant’s counsel that he can, because the auctioneer is his agent, and that he who sells by his agent, sells by himself, by the application of the maxim, qui facit per almm,facit per se. I .agree, that where the principal can do an act, if he voluntarily appoints another to do that act, it is in contemplation of law done by himself. But here the plaintiff, the employer, could not do the act himself, and therefore a sale by the auctioneer is not a sale by the employer, nor could a declaration upon it, as such, be supported. Would even payment to the owner, without the order or approbation of the auctioneer, be a bar to an action brought by the auctioneer ? We know in fact that the sales are made by the auctioneer in his own name, that *the buyers of goods at the auction stores very seldom know who is the owner, nor [*346 does the owner inquire who is the purchaser, and that auctioneers frequently advance monies on goods delivered to them for sale, and therefore the argument can have no weight. 2 Stra. 1182, is a strong case to prove, that on such sale the vendee is not answerable to the owner. Should the auctioneer be considered as a factor, he is a factor acting upon a del credere commission, in which case the buyer can even set off any demand which he may have against the factor. 7 Term Rep. 259. 2Bac. 124-5. (last edit.) Besides, the auctioneer alone can recover his own commissions and the one per cent. duty. -Will it be contended, that every purchaser of goods at vendue may be liable to two actions'for the goods of every employer, one by each employer and another by the auctioneer ? By the act of 26th November 1779, only one auctioneer -could be appointed, who was to give bond with security in 20,oool. which reduced by the scale, is not quite 520I. This bond was in express terms “for the payment “of his employers.” Each of the many auctioneers in 1790 was to give bond in 2000I., conditioned as I before stated. Can it be supposed, that while the legislature increased the security near fourfold, they could mean to extinguish from 94 to 98 parts in 100 of the value of what was to be secured, and to secure only one per cent. ? What! compel every person who is obliged to have his goods sold at vendue, to entrust them to an officer of their own creation, and of the appointment of the executive, over whom the employer has no controul, and not oblige him to give security, contrary to uniform legislative practice ? Nothing short of express words would warrant us in accusing the legislatures who passed the several acts from 1780 to 1790, (inclusive,) which have been cited, of such want of wisdom and justice, of sporting with at least 94 per cent, of the property of the needy part of their fellow citizens, and studiously securing one per cent, to the state! The law of 13th April 1782 goes very far indeed, *346 when it declares that the bonds given by the auctioneers under the act of 23d September 1780, should be a security for the payment of the additional one per cent., imposed by the act of 1782, as before stated. I rejoice that we will not probably ever be required to decide upon this part of the act of 13th April 1782 !
*347] Although the sum in the bond given by the sole auctioneer who could be appointed by the law -of 1779, to whom alone all the property sold at auction in the city was entrusted, was deemed a sufficient security ; although that sum is increased now near four-fold, and the business is divided among so many auctioneers, and the owner has the choice of any of them, yet it is *contended that the sum is too small, and that it would not be a real security ; and therefore, because it is inadequate, it cannot be supposed that it extends to employers, but must be confined to the payment of the one per cent., for which alone it was adequate. It was answered at the bar, that this .■security was larger in proportion to the trust than that given by sheriffs. Let me add, that as every person intending to sell goods at vendue may choose which of the auctioneers he pleases, he has the additional security of the reputation which the auctioneer has acquired. Scarcely one yvho has occasion to send goods to avery large amount to be sold at vendue, but may be informed by his mercantile Triends pretty exactly how far he may trust the auctioneer, taking into view the solvency of his sureties. ■Besides, generally speaking, the auctioneer must pay over the money immediately after the sale of the goods ; he occasionally advances a certain proportion of the goods, as before observed. If he should by trifling, neglect or misapplication of the money, withhold payment for only a few days, the alarm is spread through the coffee-house and city immediately, and his credit becomes blasted. There is little danger that he will be again trusted, till he shall not only have made complete payment to the party complaining, but also satisfactorily account for his delay. Sheriffs, on the contrary, may frequently keep in their hands all the monies which they have been collecting for three or four months, without legal censure: suitors may complain, but they cannot employ another sheriff on a future occasion. These observations form a full answer to the arguments urged from the supposed inadequacy of the security ; the observation of the counsel for the plaintiff, that few persons applying for the office of auctioneer could procure bail in large sums, has some weight also.
I am conscious that I listen to the arguments of counsel in every case with attention. I will not say that in this case I listened with more than usual attention. I certainly did not employ less, especially as we and the parties have been deprived of the abilities of our elder and more experienced brothers. Judges cannot even in their judicial capacities entirely divest themselves of the feelings of men. The humane mind generally sympathises with bail, who are obliged to pay for the default of *347 the principal, without a probability, a possibility of reimbursement.
This is not only the case of bail, but the widow and orphan of that bail must pay the money. It is cause of much consolation to us, that in this case the affected parties are blessed with such affluence that they will scarcely feel the loss. But howev*er painful to our feelings, we would be obliged to give ^ „ the same judgment, were it to draw the tear from a widow’s [*348 eye, or snatch a morsel of bread from the orphan’s mouth.
The case was exceedingly well argued on both sides. Every thing which legal learning, abilities and ingenuity could suggest, has been urged on the part of the defendants. In the arguments on the part of the plaintiff, equal talents were displayed, and forced conviction on my judgment. The counsel for the defendants have not, to my mind, been able to explain away or weaken the force of the plain, natural and reasonable meaning of the words upon which the plaintiff founds his claim. A full and to me an irresistible answer has been given by the counsel for the plaintiff. My opinion therefore is, that judgment be entered for the plaintiff.
If I err, I have this further consolation, that my error will be rectified in a superior court.
Bracicenridge, J.
The object of the first vendue law, which is of February 14th 1729-30, is stated in the act to be “to pre- “ vent sales at unreasonable times, in deceit of the buyers, and “to the great annoyance of the inhabitants, by reason of the “ many idle and disorderly persons assembling themselves to- “ gether in the night time, in the open streets, at the said ven- “ dues or public sales.” By this act, bond must be given to the mayor, for the use of the corporation, for the honest and due execution of the office of vendue master, and for the due observance of the ordinances of the said city, touching the regulating vendues, or public sales, or auctions within the same. Prov. Laws 155, (Gallow. edit.) Whether this bond was construed a security merely for good behaviour, the holding of the vendues at reasonable times and seasonable hours, and fair dealing to the purchasers, and the due observance of the ordinances of the corporation, or whether also it enforced the doing justice to the owner of the goods sold, is a question of the same nature with that before us. “The honest and due execution ” of the office of vendue master would seem to embrace it.
By the act of 26th November 1779, the auctioneer before he enters on the duties of his office, shall become bound with two sufficient sureties, conditioned “ for the faithful performance of “the duties required of him, and for the honest and just satis“faction and payment of his employers, and every one of them.” A recompence is provided for selling, collecting the money, and paying over the same without loss or waste.
By the act of 23d September 1780, the condition of the bond *348 to be given is “ for the faithful discharge of their duties; and for * I “ *well and truly performing the terms and payments in *349] "and by this act directed.” The penalty is nominally the same, as in the former act, 20,000l.
By this act for the first time, a centum is reserved payable to the commonwealth. But would it be a reasonable construction to say, that the adding another obligation, or binding the auctioneer to do something more than he was bound to do before, reduced the condition of the bond, and restrained it to this additional duty of his office ? The preceding clause containing the condition of the bond has a sweeping effect, and would seem to comprehend all that was specified in the former act or contemplated therein, “the faithful discharge of their duties, and for well “and truly performing the terms and payments in and by this “act directed and required.” It was a duty before to pay over, ajid would seem to remain a duty still. A fair construction of the condition would seem to be, not only a discharge of duties generally, but in particular of those added by this act.
By the act of 27th March 1790, under which the bond in question was given, the condition is in the same words as in the preceding act, and would seem to me to carry the same construction, terms and payments extending to the amount of sales for the owners ; for, in several of the acts of general assembly, to which this is a supplement, it was specified as an .object. This clause would seem to me to settle it, “well and truly performing “the terms and payments in and by this act, and the several “acts of general assembly to which this is a supplement.” All duties and obligations are embraced. Several acts to which this is a supplement, made the paying over the money to the employers expressly a duty.
The reducing the penalty of the bond from 20,000!. to 20001. is a presumption, that the object of the security was reduced. But this presumption is rebutted and explained, by the relative value of the current medium, at the different dates of these acts.
The inadequacy of 2000I. specie, which in fact was more than 20,oool. in bills of credit at the time, to cover the amount of sales made, and secure the owners of goods, also forms a presumption, that it was not intended to cover those sales, and comprehended only the centum coming to the treasury. But this is explained by considering, that no owner is obliged to ven-due his goods. The venduing goods was in fact not originally favoured by the law. It is a part of the preamble of the act of 26th November 1779, that “whereas the restrictions and prohi“bitions heretofore laid upon sales by auction or vendue, have “not proved effectual; for remedy whereof, be'it enacted,” &c. Venduing was barely permitted or tolerated, under certain *restrictions and regulations, but not encouraged. But if *350] all that security is not produced for the owners of goods, which might have been by a higher penalty, it does not follow that they should be considered as having none at all, Inde *350 pendent of the bond, he has the additional security of the estate of the delinquent auctioneer, whatever it may be. He has the power of complaining on any delinquency to the executive authority by whom this officer is appointed, who can remove him at pleasure.
Cited, approved and followed in.5 S. & R. 29; 1 Watts 438; 8 Watts 160; 39 Pa. 177.
That the owner of goods can forbid payment to the auctioneer and collect himself, cannot be. The auctioneer has a lien on the goods brought to him, not only for his commission, but for the centage to the revenue ; and to separate these before collection, on a variety of articles, and to different purchasers, is impracticable.
From the necessity of the case therefore, the law would seem to give the auctioneer the power to collect the money, and as he is morally bound to pay it over to the employer, I am disposed to think him- legally bound also, under the condition of the bond, and that this duty is within the express words of the obligation. “The said John Chaloner shall well and faithfully execute the “said office of auctioneer according to lawand therefore the distinction, if any exists between the principal and securities, does not come into view in this case. “To .execute well and “faithfully the office of auctioneer according to law,” is equally comprehensive and the same in substance with the words of the act, “a faithful discharge of his duties.” The penalty is small to be sure, to cover to such extent; but it would scarcely be a practicable thing to find an individual who would be willing to take the office, and could find security to a greater amount, or to an indefinite extent. It would reduce the thing to a company affair, an association which could alone be competent to a respon - sibility of so high a nature.
These observations mark the inclination of my mind. I shall give my opinion in favour of the plaintiff.
This judgement was afterwards affirmed on a writ of error to the High Court of Errors and Appeals, January 24th, 1804. 4 Dall. 95.