Thommen, Appellant, *v.* Aldine Trust Co. et al.

Argued December 1, 1930. Before FRAZER, C. J., WALLING, SIMPSON, KEPHART, SADLER, SCHAFFER and MAXEY, JJ.

*Claude B. Wagoner,* with him *Marshall A. Coyne,* for appellant.—Where several instruments are made as part of one transaction, they will be read together, and each will be construed with reference to the other: Parker v. Supply Co., 186 Pa. 294.

The primary rule in the construction of contracts is that the court must, if possible, ascertain and give effect to the mutual intention of the parties so far as that may be done without contravention of legal principles: Bangor Peerless Slate Co. v. Slate Co., 270 Pa. 161; Jackson v. Myers, 257 Pa. 104; Wood v. Schoen, 216 Pa. 425; State Camp v. Kelley, 267 Pa. 49.

The rule that a contract of suretyship must be strictly construed in favor of a surety cannot be used to circumvent the expressed intent of the parties: Roth v. Miller, 15 S. & R. 99; Little Mfg. Co. v. Lipschutz, 87 Pa. Superior Ct. 102; Clarke v. Adams, 83 Pa. 309.

Defendants waived the defense of ambiguity.

A defense not set forth in an affidavit of defense will be disregarded and all evidence offered in support thereof shall be rejected: Smyser v. Strawbridge, 4 Pa. D. & C. 297; Thorpp Sons Co. v. Trust Co., 6 Pa. D. & C. 362; Comerer v. Fraker, 29 Pa. Dist. R. 491.

The evidence in the case at bar shows an explicit and unambiguous contract: Mason-Heflin Coal Co. v. Currie, 270 Pa. 221; Am. Products Co. v. Refining Co., 275 Pa. 332.

The judgment in the suit against the principal, Thommens, Inc., is res judicata as to the validity of the principal contract: Milavetz v. Obert, 164 N. W. 910; Henry v. Flynn, 79 Pac. 42; Oberbeck v. Mayer, 59 Mo. App. 289; Sherman v. Smith, 169 N. W. 216; Drummond v. Prestman, 12 Wheat. 515.

*Joseph L. McAleer,* with him *William D. Harkins,* for appellees.—The judgment of the court of common pleas No. 5, against Thommen's, Inc., is not res judicata as against these defendants sued in a fiduciary capacity: Lockard v. Vare, 230 Pa. 591; Byer's Est., 205 Pa. 66; P. R. R. v. Roydhouse, 267 Pa. 368; Siegfried v. Boyd, 237 Pa. 55; Walker v. Phila., 195 Pa. 168.

The contract of suretyship was so vague and ambiguous as to make its interpretation impossible, particularly in view of the well-known principal of law that a contract of suretyship must be strictly construed to impose upon the surety only those burdens clearly within its terms, and not to be extended by implication or presumption.

The alleged agreement of suretyship was not a continuing guarantee in any event and was revoked by the death of the guarantor: Little Mfg. Co. v. Lipschutz, 87 Pa. Superior Ct. 102; Liquid Carbonic Co. v. Truby, 40 Pa. Superior Ct. 634; Illinois Roofing & Supply Co. v. Gorton, 6 Pa. Dist. R. 407.

The writing relied upon in this case is an agreement of suretyship and was not sufficient under the statute of frauds: Heller v. Cochran, 280 Pa. 579; Safe Dep. & Trust Co. v. Coal & Coke Co., 234 Pa. 100.

OPINION BY MR. JUSTICE SADLER, January 5, 1931:

Bertha Thommen, plaintiff, brought suit against her husband's estate to recover upon his guarantee to make

certain payments in case of default by the principal, Thommen's, Inc. From 1912 to 1918 the two first named had been engaged jointly in the catering and confectionery business. Marital difficulties caused a separation, and thereafter each conducted individually the same character of work through different organizations. In the latter year, Thommen's, Inc., was formed by the husband, who was named president, he owning practically all of the capital stock, having in fact exclusive control, and, in 1921, the company so formed purchased the business of the wife. To protect against competition, as well as to secure her assistance in obtaining orders, the new corporation on June 11, 1921, in regular manner, authorized the execution of a contract by which the plaintiff agreed to refrain from all like business and to aid, as best she could, in the securing of new customers, in consideration of the payment of a monthly sum, to be reduced by one-half if she remarried, and for the performance of this obligation assumed, the husband agreed to become responsible, using this phrase noted on the executed writing: "I hereby guarantee the fulfillment of the within agreement. John Thommen (Seal)." Thereby, he became in effect a surety, though this word was not used in the notation referred to: Act of July 24, 1913, P. L. 971; Rochester Bank v. Fry, 294 Pa. 425.

In the same year the parties were divorced, and Thommen died during the year following, leaving a will, naming executors and trustees, who are defendants in this proceeding. The statement filed avers payments were made by the principal, as the contract provided, until September 3, 1926, though in the affidavits of defense submitted by the personal representatives this fact, as well as any responsibility, was either denied or not admitted, and proof demanded,—a proper and sufficient reply under the Practice Act: May 14, 1915, P. L. 483, as amended March 30, 1925, P. L. 84. This made it necessary for plaintiff to establish her claim by the preponderance of the testimony. If she could show the de-

ceased had assumed liability, that a default existed, and the amount thereof, a recovery could be had against the estate, for the promise to indemnify did not contemplate the performance by the decedent of some personal service, but constituted an undertaking to pay money at some future time, in case the company failed to carry out its assumed obligation, as the death of the surety does not ordinarily extinguish the responsibility imposed (50 C. J. 99), though the contract does not purport to bind the heirs, executors or administrators: White's Exrs. v. Com., 39 Pa. 167. It was claimed that Thommen's, Inc., failed to continue the promised payments, and the surety's estate therefore became legally responsible.

Plaintiff first brought suit in Court No. 5, against the principal contractor and the personal representatives of the surety, seeking to recover installments unpaid. A statutory demurrer was filed by the last named, on the authority of Githers v. Clarke, 158 Pa. 616, and Lehigh Nat. Bank v. Seyfried, 283 Pa. 1, denying the right to maintain a joint action. The result of this well taken legal objection was the filing of a stipulation by the plaintiff agreeing to a dismissal of the action in so far as the estate was concerned. The case proceeded against the company, and evidence was offered to show its liability as principal in the contract. Though the administrators of the individual surety necessarily were aware of the pendency of the proceeding, from which they had been discharged as parties, they were given no formal notice to come in and defend, and indeed had no right to intervene for this purpose had they so desired. Defendant set up a claim that the contract could not be legally enforced because entered into in fact to facilitate the securing of a collusive divorce between the husband and wife. This contention did not avail, and the judgment entered below was affirmed by the Superior Court on December 13, 1928: Thommen v. Thommen's, Inc., 95 Pa. Superior Ct. 17. In the meantime the present ac-

tion was brought on September 30, 1927, in Court No. 3, against the estate of the surety to recover the same unpaid installments alleged to be due under the contract of June 11, 1921.

At the trial, held March 21, 1929, the record in the first suit, in which the principal alone was defendant, including the affirmance by the appellate court, was offered to establish the liability of the estate, and admitted against objection. No other testimony was presented, except proof of the deceased's signature to the agreement to indemnify, and evidence of plaintiff herself that she had not engaged in business after the death of her husband. The affidavits of defense filed by the executors and trustees were also produced, and admitted for the purpose of showing no new issues had been raised in this suit against the surety, and a calculation of the amount due at the time of trial was handed to the jury without objection. The testimony referred to, depended on to make out plaintiff's case, was held sufficient by the court, and a verdict in her favor was directed. Later, judgment n. o. v. was entered for defendants, which led to this appeal.

Two reasons were given by the court below for the action taken. After reflection, it was of the opinion that the record in the suit against the principal, and the judgment there entered for the plaintiff, were not admissible to prove the liability of the estate of the surety, it not being a party to the first proceeding. In reaching this conclusion, we are convinced no error was committed, for the litigants were not the same, nor was the cause of action. Though an effort had been made to join the personal represetnatives in the first suit, their names had been withdrawn prior to the hearing of that case. Disregarding the fact that the judgment then obtained was based largely on the testimony of the wife, who would have been incompetent in a proceeding against the estate of the deceased husband as to many facts sworn to, the record could not be used to establish the liability of

the surety. We need refer only to the carefully considered opinion of Chief Justice AGNEW, in Giltinan v. Strong, 64 Pa. 242, where the question involved was fully discussed, and the court below reversed because of the admission of a record under like circumstances.

We may also call attention to Siegfried v. Boyd, 237 Pa. 55; State Hospital v. Consolidated Water Supply Co., 267 Pa. 29, and Hochman v. Mortgage Finance Corporation, 289 Pa. 260, for statements of principles showing the judgment first obtained against Thommen's, Inc., is not res judicata in a second suit against the surety obligated as was the decedent here. Had the agreement to indemnify been based on an official bond, or constituted a promise to pay a judgment which might be secured against the principal, the first recovery would be held binding on defendant in the second action: Clauss v. Ainey, 279 Pa. 534. The rule in such cases is laid down in Com. v. Fidelity & Deposit Co., 224 Pa. 95, 102, where it was said: "As to official bonds, bonds of indemnity, and bonds to insure the faithful performance of duty and to secure a proper accounting by persons in fiduciary relations, the rule of our cases seems to be that a judgment against the principal is conclusive against his sureties as to his misconduct and failure to properly account." A contrary determination is reached where, as here, the surety has not agreed to be bound by a judgment against his principal (Giltinan v. Strong, supra), but has contracted to indemnify only in case of default in the payment of a debt by another.

In passing upon the motion for judgment n. o. v., the lower court properly held that the record of the first suit, upon which plaintiff relied at the trial, was wrongfully admitted, and must therefore be disregarded. The only other competent evidence disclosed to show liability was the proof of the contract, the agreement to make good if Thommen's, Inc., failed to comply with its obligation, admittedly signed by the decedent, and the statement of the sum claimed to be due, which it was agreed

should be handed to the jury. Plaintiff had naturally been led to believe by the rulings of the court during the course of the trial that further evidence as to the default, and the amount thereof, was unnecessary, and that she was not required to overcome defenses interposed by the personal representatives, since she could rely on the conclusive effect of the first judgment secured against the principal. If the admission of this testimony was the only error, and other evidence, sufficient to justify a recovery, appeared, it would be our duty to grant a new trial, and remit the record for this purpose.

The learned court, however, held further that the contract of indemnity was too indefinite to be, in any case, enforceable. If correct in this conclusion, judgment was properly entered for the defendants n. o. v. It will be remembered that Thommen's, Inc., was formed by the husband in 1918, at the time of his separation from the plaintiff, and he was its president and practically the sole owner of the corporation. The wife was at the time engaged in a competitive business, and the company desired to secure her withdrawal from the trade. This led to the agreement of 1921, by which, for a consideration, she agreed to no longer compete, and the decedent guaranteed the performance of that contract. The court below was of opinion that this promise was ambiguous, in that it was impossible to determine whether the obligation assumed was an agreement to indemnify the company, if the wife should again engage in business, or one to secure to her compliance with the undertaking of the corporation, which the husband controlled almost exclusively, and insure payment of the sums fixed by the written paper to which the guaranty was attached. Bearing in mind that the agreement of the wife was for the benefit of the surety's own company, and that it assumed primarily the responsibility for the carrying out of its terms, we can come to no other conclusion than that the "fulfillment," which was guaranteed, was the contract to satisfy the installments provided for, in considera-

tion of the wife's withdrawal from competition, and the turning over to the company of such orders as she might receive. To hold he became surety for the carrying out of her obligations to his own concern would be, in effect, a guarantee from himself to himself, if the fund was to be distributed among the stockholders, he owning more than ninety per cent of the stock.

It will be noticed that the preamble of the contract stated its purpose was to protect the company from competition. It agreed to make the stipulated payments for a valuable consideration, and paragraph 4 clearly showed Thommen's, Inc., was the principal contractor, bound to make the payments fixed, since it therein agreed to do so, even though Mrs. Thommen failed "to perform any service or turn over any orders during any specific week or other period of time, the intent of this agreement being that the payments herein called for shall be made continuously and without interruption for the mutual benefit of both parties." This provision indicates that the surety was not guaranteeing the continuous and permanent performance of the obligation assumed by the wife, but a promise to see that she was regularly paid, even though a default in performance on her part appeared. With such a provision it would be a strained construction to hold that the surety was guaranteeing the strict compliance by the wife of her promise to continue in regular service for the company. The evident intention was to insure the payments to the wife, the contract having been made for the benefit of the company, in reality Thommen himself, and it was its obligation he personally guaranteed.

The meaning of the contract was for the court, and depended upon a consideration of all the attending circumstances: Bangor Peerless Slate Co. v. Slate Co., 270 Pa. 161; Jackson v. Myers, 257 Pa. 104. Though a surety is favored in law, and the contract must be strictly construed so that only the burden assumed shall be imposed (Perry v. Payne, 217 Pa. 252; Warner Gear

Co. v. Bergdoll, 253 Pa. 164; Nazareth Co. v. Marshall
Co., 258 Pa. 558), yet this rule "should not be carried
to the length of giving the contract a forced and unrea-
sonable construction with the view of relieving him":
50 C. J. 80; 21 R. C. L. 978. As was said by Mr. Justice
WALLING, in State Camp v. Kelley, 267 Pa. 49, 55:
"While the contract of a surety cannot be extended be-
yond its terms, it should not be construed so strictly as
to defeat the manifest intention of the parties." Sure-
ties are as much bound by the true intent and meaning
of the instrument to which they are parties, as prin-
cipals (Roth v. Miller, 15 S. & R. 99), and though only
enforced according to its exact terms, and liability is not
to be extended by implication, it is nevertheless nothing
more than a contract and must be construed according
to the apparent intention of those bound thereby: Fink
v. Farmers' Bank, 178 Pa. 154.

A consideration of the ordinary sense and meaning of
the words used in the contract here involved indicates
the manifest purpose of Thommen was to guarantee that
the obligations of his corporation were carried out. To
say that he was promising the fulfillment by the wife of
her promises, made for the benefit of his corporation, or
himself, cannot be justified. Little Mfg. Co. v. Lip-
schutz, 87 Pa. Superior Ct. 102, relied on by the court
below in reaching a contrary conclusion, cannot be con-
sidered controlling in the present case. There, one in-
terested in a corporation, communicated with a vendor
of goods, asking that credit be extended to it, and, in the
letter forwarded, used both the words "I" and "we" in
guaranteeing the payment of the bill. It was properly
said that the terms of the contract were too indefinite
to bind the individual, as it was impossible to tell
whether the reference was to the corporation or the de-
fendant.

The question remaining is the proper disposition of
the present appeal. Clearly, the record of the former
judgment against the principal, upon which plaintiff re-

lied, was inadmissible in evidence, yet the case was tried by the court on the theory that this proof, supplemented in the way already noticed, was sufficient to support the claim sued on. No testimony to show any default was properly placed upon the record, though a calculation of the amount claimed to be due was, with consent, submitted to the jury. If the court had declined to receive the copy of the proceeding in No. 5, against Thommen's, Inc., it is possible that the plaintiff would have offered evidence to show the default, and the extent thereof, and, as well, have presented competent testimony to explain any uncertainty or ambiguity existing. The ruling at the trial, admitting the evidence of the former record, for the purpose of establishing liability, necessarily misled the plaintiff as to the essential proof required to make out her case. Attention was called to this hardship in an application for a reargument, where it was asserted that, under such circumstances, the claimant should be given opportunity to fully present her proofs.

Though the grant of a new trial is a matter largely in the discretion of the court below, it should be ordered when necessary to reach a just determination of the merits of the controversy: American Products Co. v. Refining Co., 275 Pa. 332; Finch v. White, 190 Pa. 86. As was said in Daniels v. Atkins, 95 Pa. Superior Ct. 86, 92: "As it is possible that the plaintiff, in view of the ruling, did not introduce other available proof upon this branch of the case [she] should be afforded an opportunity to offer whatever evidence may be obtainable." In the instant case, the plaintiff was led by the rulings of the court to believe the judgment against Thommen's, Inc., was conclusive, and she could safely consider as established all the facts involved in the first proceeding. This was a mistake, as later held by the court, but its effect may have been, as now urged, a failure to introduce other evidence, which would have justified a verdict in plaintiff's favor, and, in fairness, the opportunity

to present additional competent testimony, if available, should be granted. Doubtless this request would have been allowed had the conclusion not been reached that judgment n. o. v. must in any case be entered because the ambiguity of the surety contract rendered it unenforceable. We cannot agree with the latter position, and are of the opinion that the interests of justice require that the matter should be again heard, at which time the record of the first judgment will not be admitted, but the plaintiff permitted to present any admissible evidence to substantiate her claim.

The judgment is reversed and a venire facias de novo awarded.