## Waber's Estate.

Argued January 8, 1935. Before FRAZER, C. J., KEP-HART, SCHAFFER, MAXEY, DREW and LINN, JJ.

*Harry Shapiro*, with him *Louis Waber*, for appellant.

*Morris Wolf*, of *Wolf, Block, Schorr and Solis-Cohen*, with him *J. Edgar Wilkinson*, of *Shields, Clark, Brown & McCown*, for appellee.

OPINION BY MR. JUSTICE DREW, February 4, 1935:

At the audit of the first and partial account of Morris Waber, administrator of the estate of David Waber, the Integrity Trust Company presented a claim for $22,900, with interest, based upon two joint and several demand notes, each signed and endorsed by decedent and by Max and Louis Waber. The allowance of the claim in full was affirmed by the court below, and from its decree the administrator has appealed.

The notes in suit represented the balance due the company upon two loans, of $95,000 each, given to Max Waber, brother of decedent, for the purpose of financing the erection of two apartment houses, each loan being

originally secured by first and second mortgages on the respective premises. After the completion of the buildings, however, a settlement was made, in which the first mortgages were consolidated and taken over in reduced amount by the Metropolitan Life Insurance Company. The trust company's claim was thereby diminished to $22,900, evidenced by the notes in suit, to secure which a new second mortgage on the entire premises was executed. Building operation agreements had been entered into at the time of the original transaction by the company and Max Waber, in which it was provided that all rents, together with certain other proceeds from the premises, were to be deposited with the company and were "irrevocably appropriated to the payment of indebtedness of" Max Waber to the company, and "to the payment of debts contracted for, in and about the erection and construction of the said buildings."

The administrator resists liability on the ground that decedent's obligation was no greater than that of a guarantor, and that therefore the trust company must exhaust all its security and other recourse against Max Waber, the principal debtor, before it can reach decedent's estate. His position in this respect is founded upon the following language in the applications for the loans: "Max Waber is the builder and owner. David and Louis Waber are guarantors only." We are unable to agree with this contention. Section 1 of the Act of July 24, 1913, P. L. 971, provides: "Every written agreement hereafter made by one person to answer for the default of another shall subject such person to the liabilities of suretyship, and shall confer upon him the rights incident thereto, unless such agreement shall contain in substance the words: 'This is not intended to be a contract of suretyship,' or unless each portion of such agreement intended to modify the rights and liabilities of suretyship shall contain in substance the words: 'This portion of the agreement is not intended to impose the liability of suretyship.' " That act was undoubtedly

passed in view of the fact that the words "guaranty" and "suretyship" are in ordinary business transactions frequently used interchangeably and with little understanding of the technical differences between the two. Even before the passage of the act, we held that the use of the word "guarantee" did not of itself negative an intention that the liability should be that of a surety: Riddle v. Thompson, 104 Pa. 330. Since the act, it is well settled that the words "guarantee" or "guarantor" are not sufficient to satisfy the act, and therefore do not prevent the creation of "the liability of suretyship as distinguished from technical guaranty": Miners State Bank v. Auksztokalnis, 283 Pa. 18; Rochester First Nat. Bank v. Fry, 294 Pa. 425; Bloomfield Trust Co. v. Trojanowski, 298 Pa. 61; Brock's Assigned Est. (No. 1), 312 Pa. 7. As we pointed out in the Brock case, the act expressly requires a statement, in the negative form, of an intention *not* to be liable as surety, if such liability is to be avoided. Plainly, no such statement appears in the instant case. The use of the word "only" after "guarantors" in the applications indicates nothing more than an intention that the so-called guarantors shall not be regarded as principal debtors. Since decedent's obligation was in substance an undertaking "to answer for the default of another," it follows that the act applies; and, in the absence of an expressed intention not to be so liable, his liability was therefore that of suretyship.

It is argued by the administrator that because the applications for the loans, in which the sentence "David and Louis Waber are guarantors only" occurs, were not signed by decedent, they are "but evidence of . . . decedent's collateral parol agreement to answer for Max Waber's default," and that hence the Act of 1913, supra, which applies to "written agreements," has no bearing on the case. To this it may be answered that, in the absence of fraud, accident or mistake, evidence of such a parol agreement cannot be allowed to vary the decedent's obligation as integrated in the written notes: Pender v.

Cook, 300 Pa. 468; Speier v. Michelson, 303 Pa. 66; Architectural Tile Co. v. McSorley, 311 Pa. 299.

The administrator claims that rents which were deposited with the company and paid out to subcontractors, on vouchers signed by Max Waber, should have been applied in reduction of the notes, and that the company's failure to do so reduces the liability of the estate pro tanto. Such action by the company, however, was authorized by the original terms of the building agreements, according to which the moneys collected and deposited with the company were to be applied, inter alia, "to the payment of debts contracted for, in and about the erection and construction of the said buildings." Furthermore, a writing which Max Waber testified he signed at the time the company took over the rents, and which, according to him, represented an "agreement . . . approved by Dave and Lou," authorized the application of them "on account of the reduction of all money due on the operation." Clearly, the payments to subcontractors were applications in reduction of money due on the operation, and were therefore acquiesced in by David Waber. At no time, so far as the record discloses, did the latter object to the company's action in this respect. The court below was right in holding that these payments did not constitute a misapplication of the moneys by the company.

Decree affirmed at appellant's cost.