## Fullmer's Estate.

Argued April 22, 1935. Before FRAZER, C. J., SIMP-SON, KEPHART, SCHAFFER, MAXEY, DREW and LINN, JJ.

*James R. Wilson,* with him *Albert J. Williams, Philip Richman* and *William J. Wilson,* for appellant.

*Herbert A. Barton,* with him *Henry G. Sweeney* and *Swartz, Campbell & Henry,* for appellee.

OPINION BY MR. JUSTICE MAXEY, June 29, 1935:

John Henry Fullmer, now deceased, and William F. Egan formerly did business as a copartnership, trading as Egan & Fullmer. Later they incorporated. On March 23, 1932, Egan & Fullmer, as subcontractors to R. C. Ballinger Co., submitted a written estimate to do the plumbing and heating work on the William Penn Charter School, Philadelphia. The Ballinger Co. requested a bond with surety. Egan & Fullmer, Inc., made a written application dated April 14, 1932, to the Indemnity Insurance Company of North America to become surety

on their bond. At the end of the application appears the following: "In consideration of the Indemnity Insurance Company of North America executing the bond herein applied for, we jointly and severally join in the foregoing indemnity agreement." This was signed "John H. Fullmer (seal)." On April 16, 1932, the Indemnity Insurance Company wrote the obligee, the Ballinger Co., of its receipt of the application for a bond in the sum of $12,556, saying: "We have expressed our willingness to execute the bond covering their contract with you providing there is nothing contained in the contract or bond beyond the usual provisions." On May 2, 1932, the Ballinger Co. wrote Egan & Fullmer, Inc., accepting the estimate of the latter for all heating, plumbing, and ventilating work for the additions and alterations, etc. The letter further stated: "It is understood that this acceptance covers all work called for in the plans and specifications whether specifically mentioned or not with the exception of the Junior School addition which will not be built. The contract is subject to the following conditions: (a) That the work will be done in strict accordance with the plans, specifications and addenda thereto. (b) That you will furnish a completion bond containing a penal clause and that the bond will remain in force for a period of one (1) year after final completion and acceptance of the General Contract by the Architects and Owners. (c) That the penal bond will guarantee payment of all materials bills not later than thirty (30) days after acceptance of the General Contract by the Architects and Owners. . . . It is understood that failure to comply with any of the above conditions will constitute sufficient cause to render this contract null and void. . . . Please submit, for approval, the names of Foremen whom you would be willing to put in charge of the work. . . ." Egan & Fullmer, Inc., by letter dated May 3, 1932, signed by William F. Egan, and addressed to R. C. Ballinger Co., gave the latter the names of the foremen and said: "Hoping that these will satisfy those

concerned and assuring you that this job is going in right and pretty."

John Henry Fullmer died on May 6, 1932, at which time no bond had been executed nor had the written contract dated May 2, 1932, hereafter referred to, been executed. The agent of the Indemnity Insurance Company had knowledge of Fullmer's death the day after he died and the claimant admitted that it had actual knowledge of Fullmer's death before delivery of the bond. Sometime after Fullmer's death, a contract dated May 2, 1932, was entered into between the Ballinger Co. and Egan & Fullmer, Inc.

The testimony produced in behalf of Fullmer's estate showed that the incorporation papers of Egan & Fullmer, Inc., were not received by them until a day or two before Mr. Fullmer's death, and that prior to that time Egan and Fullmer were copartners. The Ballinger Co. had not obtained actual delivery of the bond of the Indemnity Insurance Company at the time they entered into the contract with Egan & Fullmer, Inc., relying upon the written commitment of the surety company. When it was not forthcoming, they wrote the surety company under date of May 23, 1932, stating, inter alia, "On April 16th, you wrote us stating that you would issue a bond to Egan and Fullmer, Inc., covering their contract with us for plumbing and heating to be installed in the addition to the William Penn Charter School." The letter concludes: "On the basis of your commitment of April 16th, we entered into a contract with Egan and Fullmer, Inc., with the full knowledge of the architect and the board of overseers of the school. In accordance with our contract with them, Egan and Fullmer, Inc., have done certain portions of the work. We also have made certain arrangements which would cause a loss to us if a bond is not forthcoming. Under these circumstances, we must insist upon a prompt delivery of the bond so that the work may be completed by September 1st as called for in our contract." Shortly

after this, the bond was delivered to the Ballinger Co. Egan & Fullmer, Inc., defaulted on August 23, 1932, and it was necessary that their contract be completed by the indemnity company appellee at a total cost of $3,684. At the audit of the Fullmer estate, the indemnity company presented a claim for $3,684, and it was allowed. Exceptions were filed to the adjudication. These were dismissed and this appeal followed.

Two questions present themselves in determining whether or not the estate of the decedent is liable upon the indemnification agreement which he, during his lifetime, entered into: (1) Would any liability attach to John H. Fullmer upon the signing of the indemnification agreement on April 16, 1932, and (2) Would such liability even though contingent survive after his death and attach as against his estate when the liability was determined?

Relying upon the indemnification agreement of the appellant's decedent, Fullmer, accompanying the application for the bond, the Indemnity Insurance Company, the appellee herein, by letter dated April 16, 1932, to the Ballinger Company bound itself to execute the bond applied for; and, in consequence of the appellee company so committing itself, the contract for the plumbing was awarded to Egan and Fullmer, Inc., by the Ballinger Company. It is unimportant whether the contract bond was actually delivered before or after Fullmer's death. The fact is that the Indemnity Insurance Company did become surety and the moving reason for its doing so was the reliance it placed on Fullmer's agreement. This gave rise to a liability on the part of Fullmer. We agree with the court below that "whether or not the Indemnity Company required certain things to be stricken from the contract before they issued the bond makes no difference so far as Fullmer's estate is concerned. . . . Fullmer couldn't have cancelled this agreement of indemnity in his lifetime."

As to the second question, it is fundamental that contractual obligations of a decedent which do not terminate at his death are binding on executors and administrators in their representative capacity: 11 R. C. L. 173. This is true of the estate of a deceased guarantor or surety.

This court held in White's Exrs. v. Com., 39 Pa. 167, that the obligation on a contract of a decedent to pay money at a future time or on a future contingency survives the obligor and binds his representatives. What this court said in that case (at page 177), with reference to sureties, applies with equal force to the situation in the instant case: "A contrary doctrine would be fraught with momentous consequences. It would shake every kind of official suretyship for state, county and corporation officers; guardians, administrators, assignees and also guarantees for the performance of private contracts."

In Thommen v. Aldine Trust Co. et al., 302 Pa. 409, 414, 153 A. 750, this court said: ". . . The promise to indemnify did not contemplate the performance by the decedent of some personal service, but constituted an undertaking to pay money at some future time, in case the company failed to carry out its assumed obligation, as the death of the surety does not ordinarily extinguish the responsibility imposed."

In the recent case of Huffman v. Huffman, 311 Pa. 123, 166 A. 570, Mr. Justice SIMPSON, adopting the language used in Stump's App., 116 Pa. 33, 8 A. 866, said: "The general rule is that, to the extent of the assets that come to their hands, the personal representatives of a decedent are responsible on all his contracts, whether named therein or not, and whether the breach occurs in his lifetime or afterwards: Add. on Con., 2d Am. ed. 1059; 1 Pars. Con. 131; 2 Chit. Con., 11 Am. ed. 1406; 3 Wms. on Exrs., 6 Am. ed., page 1825."

The appellee has relied largely on Lorch's Est., 284 Pa. 500, 131 A. 381. The principles of law as enunciated in

that case are properly invoked in this. We there pointed out certain exceptions to the general rule governing the liability of a decedent's estate. "This can be largely clarified by determining, first, whether the contract was revocable during life though continuing until notice given by guarantor, or whether the obligation be considered as one which is entire and indivisible. If the latter be the proper construction of the guarantee the responsibility for advances made after death continues until the completion of all the acts contemplated. . . . If, however, the consideration passes at each time a separate sale is made and the contract is, therefore, severable, death ends the liability as to transactions occurring after actual or constructive notice thereof has been received."

If the contract of John H. Fullmer had been personal in its nature and not breached by him during his lifetime then no responsibility would rest upon his estate; or, if the contract was a divisible one no liability would attach for transactions occurring after his death, it being admitted that notice of his death was promptly given to the indemnity company. The indemnification agreement here did not partake of a contract personal in its nature. It was not like the contract of an artist to paint a portrait or that of a surgeon to perform an operation or that of an actor to play a role. In such contracts and in the absence of a provision therein for a substituted performance, personal performance is the thing contemplated and the death of the personal performer ends the possibility of performance.

Nor is this indemnity contract one that might have been terminated during the lifetime of Fullmer by his giving notice that no responsibility for transactions occurring after his death should attach to his estate. "The death of a guarantor operates as a revocation of the guaranty in all cases where the guarantor might, if living, have revoked by giving notice." Stearn's "The Law of Suretyship" (4th ed.), page 95. Fullmer could not

by notice have divested himself of the liability he assumed (even though it was contingent) after the appellee, relying upon Fullmer's promise, had bound itself to the Ballinger Company to supply the contract bond.

We have no difficulty in determining that the agreement of John H. Fullmer was an entire and indivisible contract; the consideration was single, i. e., it was the furnishing of the contract bond. "Where the contract of guaranty is a continuing one, that is, where a series of future transactions is contemplated, as successive loans, for each of which, as it occurs, the guarantor becomes responsible, the consideration being a divisible one, it seems clear that, as to transactions occurring after the death of the guarantor and knowledge or notice thereof to the guarantee, the latter, according to the weight of the authority cannot hold the guarantor liable. . . . If the consideration is entire and has already passed, then the guarantor's estate should not be released by reason of his death, even though the guarantee has knowledge thereof; and of course liability may exist at the time of the guarantor's death for which his estate could still be held": 42 A. L. R. 926, 927.

The decedent when he signed the indemnity agreement bound himself and his estate and the latter must now be held to his agreement to save harmless the indemnitee.

The decree is affirmed at appellant's cost.