[J-67A-2024 and J-67B-2024] [MO:Wecht, J.]

**IN THE SUPREME COURT OF PENNSYLVANIA**
**MIDDLE DISTRICT**

| | | |
|---|---|---|
| EASTERN STEEL CONSTRUCTORS, INC., | : | No. 103 MAP 2023 |
| | : | |
| Appellee | : | Appeal from the order of the |
| | : | Superior Court at No. 998 MDA |
| | : | 2020, entered on September 1, |
| v. | : | 2022, Affirming, Reversing and |
| | : | Vacating in part the Judgment of the |
| | : | Centre County Court of Common |
| INTERNATIONAL FIDELITY INSURANCE | : | Pleas, Civil Division, at No. 2011- |
| COMPANY, | : | 3233, entered on July 23, 2020 and |
| | : | Remanding. |
| Appellant | : | |
| | : | ARGUED:  October 9, 2024 |
| | | |
| EASTERN STEEL CONSTRUCTORS, INC., | : | No. 104 MAP 2023 |
| | : | |
| Cross Appellant | : | Appeal from the Order of the |
| | : | Superior Court at No. 998 MDA |
| | : | 2020, entered on September 1, |
| v. | : | 2022, Affirming, Reversing and |
| | : | Vacating in Part the Judgment of the |
| | : | Centre County Court of Common |
| INTERNATIONAL FIDELITY INSURANCE | : | Pleas, Civil Division, at No. 2011- |
| COMPANY, | : | 3233, entered on July 23, 2020 and |
| | : | Remanding. |
| Appellee | : | |
| | : | ARGUED:  October 9, 2024 |

## CONCURRING AND DISSENTING OPINION

**JUSTICE BROBSON**                               **DECIDED:  February 18, 2026**

I agree with the Majority that Pennsylvania's insurance bad faith statute, set forth in Section 8371 of the Judicial Code, 42 Pa. C.S. § 8371, does not apply to surety bonds. I, therefore, join Section III.A. of the Majority Opinion.  I, however, disagree with the Majority that the arbitration award obtained by Eastern Steel Constructors, Inc. (Eastern),

against Ionadi Corporation (Ionadi), hereinafter referred to as the "Ionadi Award," was conclusive and binding upon International Fidelity Insurance Company (Fidelity) as surety under the circumstances of this case. Nor do I agree with the Majority that Fidelity is responsible for paying the attorneys' fees incurred by Eastern in pursuing Ionadi in arbitration and for paying interest as determined by the Majority. Accordingly, I dissent from the balance of the Majority Opinion insofar as it is contrary to my conclusions and analyses herein relative to those issues.

It is axiomatic that a contract of suretyship, like any other contract, is to "be construed according to the intention of the parties." *Thommen v. Aldine Trust Co.*, 153 A. 750, 753 (Pa. 1931). In discerning the parties' intent, courts interpret a surety "bond[] . . . with reference to the circumstances existing prior to and contemporaneous with its making, in order that the intention of the parties may be ascertained and the purpose to be served by its execution effected." *Frederick Inv. Co. v. Am. Surety Co. of N.Y.*, 169 A. 155, 157 (Pa. 1933) (observing additionally that "an agreement should be construed in the light of the facts and circumstances under which the parties contracted[, as t]hese form a sort of context that may be properly resorted to as an aid in interpreting the contract, to the end that the objects and purposes of the parties may be carried into effect").

This Court has also determined that "the obligation of a bond cannot be extended beyond the plain import of the words used" and "[o]bligations not imposed by the terms of the bond cannot be created by judicial construction or interpretation which extends the terms beyond their normal meaning." *Commonwealth, to Use of Pa. Mfrs.' Ass'n Cas. Ins. Co. v. Fid. & Deposit Co. of Md.*, 50 A.2d 211, 212 (Pa. 1947); *see also Thommen*, 153 A. at 753 ("A contract of suretyship[ is] only enforced according to its strict terms []and liability is not to be extended by implication[]."). This is true even in the case of a bond

given pursuant to a contract incorporated into the bond, though in such a case the bond "will be construed in the light of the terms of the [incorporated] contract" in addition to the attendant circumstances. *Commonwealth, to Use of Pa. Mfrs.' Ass'n Cas. Ins. Co.*, 50 A.2d at 212. Nonetheless, the aforementioned rules "'should not be carried to the length of giving the [surety] contract a forced and unreasonable construction with the view of relieving [the surety],'" nor should the surety contract "be construed so strictly as to defeat the manifest intention of the parties." *Thommen*, 153 A. at 753. "Sureties are as much bound by the true intent and meaning of the instrument to which they are parties as principals." *Id.*

The payment bond in this matter (Payment Bond) was executed by Ionadi as the "Contractor"/"Contractor as Principal" and Fidelity as "Surety" for the construction project at issue (Project), with the Payment Bond identifying the Pennsylvania State University (PSU) as the "Owner" of the Project. (Payment Bond, 10/29/2008, at 4.) Most relevant here, the Payment Bond provided that Ionadi and Fidelity "jointly and severally" bound themselves to PSU "to pay for labor, materials and equipment furnished for use in the performance of the Construction Contract, which [was] incorporated [in the Payment Bond] by reference." (*Id.* at 5, ¶ 1.) Moreover, the Payment Bond provided the following with respect to the definition of "labor, materials and equipment" in Paragraph 15.1:

> The intent of this [Payment] Bond shall be to include without limitation in the terms "labor, materials or equipment" that part of water, gas, power, light, heat, oil, gasoline, telephone service or rental equipment used in the Construction Contract, architectural and engineering services required for performance of the work of [Ionadi] and [Ionadi's] subcontractors, and all other items for which a mechanic's lien may be asserted in the jurisdiction where the labor, materials or equipment were furnished.

(Payment Bond, 10/29/2008, at 6, ¶ 15.1.)

Sections 2 and 3 of the Payment Bond provided that, in the event of Ionadi's payment "for all sums due," Fidelity's "obligation shall be null and void." (Payment Bond,

10/29/2008, at 5, ¶¶ 2-3.) Of further significance, the Payment Bond reserved Fidelity's ability to dispute claims submitted by claimants. (*See id.* at 6, Amended ¶¶ 6.1, 6.3 (providing that Fidelity must state basis for challenging disputed amounts in response to claim and that Fidelity did not waive defenses of Fidelity or Ionadi by failing to discharge its obligations in responding to claim).) The Payment Bond also preserved Fidelity's right to trial by providing, in relevant part, that "[n]o suit or action shall be commenced by a Claimant under this [Payment] Bond other than in a court of competent jurisdiction in the location in which the work or part of the work is located." (*Id.* at 5, ¶ 11.)

Put simply, I believe that Fidelity is entitled to relief on both of the claims raised in its cross-appeal under a straightforward application of the above legal principles to the particular facts of this case. First, the clear terms of the Payment Bond and the circumstances attendant to its execution do not evidence an intent on behalf of the parties either to bind Fidelity to pay an arbitration award or resulting judgment rendered against Ionadi or to require Fidelity to engage in arbitration relative to Eastern's claims. The Payment Bond does not contain any provision wherein Fidelity agreed to participate in arbitration or be bound by an arbitration award. In fact, the Payment Bond makes no mention of arbitration whatsoever.

Instead, the Payment Bond specifically provides that a subcontractor-claimant such as Eastern may submit a claim for payment to Fidelity and, should a claim dispute arise between the subcontractor-claimant and Fidelity under the Payment Bond, any suit or action relative thereto must proceed "in a court of competent jurisdiction." (Payment Bond, 10/29/2008, at 5, ¶ 11.) Moreover, while there is an arbitration provision in the Subcontract between Ionadi and Eastern, Fidelity was not a party to the Subcontract and the Payment Bond does not specifically identify or incorporate by reference the Subcontract. Indeed, the Subcontract was executed after the Payment Bond.

Of further note, it is well settled that "arbitration[] is a matter of contract, and, absent an agreement between the parties to arbitrate an issue, the parties cannot be compelled to arbitrate that issue." *Lincoln Univ. of Commonwealth Sys. of Higher Ed. v. Lincoln Univ. Chapter of the Am. Ass'n of Univ. Professors*, 354 A.2d 576, 580 (Pa. 1976) (quoting *Schoellhammer's Hatboro Manor, Inc. v. Local Joint Exec. Bd. of Phila.*, 231 A.2d 160, 162 (Pa. 1967)). Indeed, as highlighted by Fidelity, to compel a party to arbitrate in the absence of an agreement to do so would infringe on that party's constitutional right to a jury trial. *See Pisano v. Extendicare Homes, Inc.*, 77 A.3d 651, 661-62 (Pa. Super. 2013) (explaining that "compelling arbitration upon individuals who did not waive their right to a jury trial would infringe upon wrongful death claimants' constitutional rights"); *see also Jacob v. Weisser*, 56 A. 1065, 1067 (Pa. 1904) (providing that, "before the decision of an arbitrator can be held final and conclusive, it must appear . . . that power to pass upon the subject-matter is clearly given to him" and that terms of agreement "must be clear and unmistakable to oust the jurisdiction of the courts, for trial by jury cannot be taken away by implication, merely, in any case"). To my mind, requiring Fidelity to participate in arbitration or be bound by the Ionadi Award under the circumstances presented is an affront to Fidelity's contractual and constitutional rights.

Insofar as the Majority concludes that the Ionadi Award is binding and conclusive as to Fidelity pursuant to *Conneaut Lake Agricultural Association v. Pittsburg Surety Company,* 74 A. 620 (Pa. 1909), and because Fidelity had notice and an opportunity to participate in the arbitration proceedings, I disagree. In my view, no notice or opportunity to participate in an arbitration proceeding arising under a contract to which Fidelity was not a party can override Fidelity's right to resolve all disputes under the Payment Bond—including contests to the amount of a claim—in a court of competent jurisdiction. While it could have conceivably waived its right to a judicial forum by voluntarily participating in

the arbitration, Fidelity cannot be forced to do so.[1]  In other words, Eastern could not change the forum for claims made under the Payment Bond by choosing to engage in arbitration against Ionadi, no matter how much notice or opportunity to participate it provided to Fidelity.

I, thus, would conclude that, notwithstanding any potential for Fidelity to participate in the arbitration and any invitation for it to do so, Fidelity cannot be required to give up its right to litigate *claims against it* in a court of competent jurisdiction based upon a

---

[1] The Majority concludes that, by virtue of being afforded notice of and an opportunity to be heard in the arbitration proceedings—which notice and opportunity the Majority finds to be adequate under the circumstances herein—Fidelity had no choice but to participate in the arbitration or be bound by the Ionadi Award.  The Majority opines that Fidelity could have challenged the arbitrator's jurisdiction or compelled removal of the arbitration to a court of common pleas.  Its failure to do so, the argument goes, constitutes a waiver of the court's authority to resolve Fidelity's obligation to Eastern under the Payment Bond.  Putting aside the lack of any authority or rule that would countenance such maneuvers by Fidelity, they would have failed.

It is undisputed that the arbitrator had jurisdiction over the dispute between Eastern and Ionadi.  Those parties had a contractual right to arbitration, which they freely chose.  Under these circumstances, there would not appear to be any basis in law or fact upon which an arbitrator or a court could have deprived Eastern and Ionadi of their contractually chosen forum at the urging of a third party, Fidelity.  The Majority's point on waiver, then, rings hollow.  Under the Majority's view, whether Fidelity acted or did not act, its only choice was to forgo its right to resolution of disputes in a court of competent jurisdiction and submit itself to an alternative forum to which it did not agree.

Moreover, the reasoning of the Majority could just as easily be applied to Eastern.  If Eastern wanted to avoid the situation in which it now finds itself, Eastern could have, at the time that it entered into the Subcontract with Ionadi, either:  (1) demanded that Ionadi seek an amendment to the Payment Bond requiring that disputes be resolved through arbitration; or (2) demanded that the Subcontract require disputes to be resolved in a court of competent jurisdiction.  Having done neither, Eastern cannot unilaterally divest Fidelity of the benefit of its own contractual bargain.  At bottom, this is not an instance of waiver by Fidelity.  Fidelity never waived its right to litigate claims under the Payment Bond in a court of competent jurisdiction.

later-in-time subcontract that provided a contrary forum for *claims against Ionadi*.[2]  For that same reason, Fidelity cannot be bound by an arbitration award obtained under those circumstances—*i.e.*, the Ionadi Award cannot bind Fidelity in this suit.  I, therefore, would conclude that Fidelity is entitled to relief with respect to its first issue.

As for whether Fidelity is responsible for attorneys' fees that Eastern incurred in suing Ionadi and for contractual interest, I reiterate that Paragraph 1 of the Payment Bond provides that Ionadi and Fidelity "jointly and severally" bind themselves "to pay for labor, materials and equipment furnished for use in the performance of the Construction Contract."  (Payment Bond, 10/29/2008, at 5, ¶ 1.)  The plain terms of this provision clearly do not include attorneys' fees and contractual interest.  Moreover, the Payment Bond provides a definition of "labor, materials, and equipment" in Paragraph 15.1, which definition likewise does not include attorneys' fees and contractual interest.  The Payment Bond also similarly contains a provision specifically addressing attorneys' fees, which clearly provided for Fidelity's payment of attorneys' fees to claimants only in circumstances where Fidelity has failed to discharge its obligations in responding to a claim made by a claimant under the Payment Bond.  Such circumstances are not presently at issue.

Moreover, Sections 2 and 3 of the Payment Bond provide that, in the event of *Ionadi*'s payment "for all sums due," *Fidelity*'s "obligation shall be null and void."  (Payment Bond, 10/29/2008, at 5, ¶¶ 2-3.)  I agree with Fidelity that the interpretation of the Payment Bond espoused by the Majority improperly decouples the phrase relating to "all sums due" to claimants by Ionadi from the Payment Bond's references to Fidelity's "obligation" in the same paragraphs, which "obligation" refers to Fidelity's obligation to pay only for "labor,

---

[2] Indeed, to me, a surety can never be required to litigate claims in an arbitration proceeding against its principal in circumstances where the payment bond reserves the surety's right to contest claims in a court of competent jurisdiction.

materials and equipment" as provided in Paragraph 1 and further defined in Paragraph 15.1. In my view, the Majority's interpretation also ignores the specific attorneys' fees provision contained in the Payment Bond. When read in light of the Payment Bond as a whole, Paragraphs 2 and 3 cannot be reasonably read to expand Fidelity's obligation to one that includes the payment of attorneys' fees and contractual interest to Eastern under the circumstances presented.[3]

Additionally, I find our decision in *Commonwealth to Use of Fort Pitt Bridge Works v. Continental Casualty Company*, 240 A.2d 493 (Pa. 1968), to be distinguishable from the present case. The Majority highlights that, per *Fort Pitt Bridge Works*, the phrase "sums due" as used in a surety bond can be interpreted broadly to obligate a surety to pay for everything the subcontractor bargained for under its subcontract, including attorneys' fees and contractual interest. While I do not disagree with this statement as a general proposition, I find it to be inapplicable here.

---

[3] I also reject any suggestion by Eastern or otherwise that Paragraphs 9 and 10 of the Payment Bond impose liability upon Fidelity for obligations in subcontracts related to the Construction Contract, incorporate Ionadi's subcontracts by reference, and demonstrate Fidelity's assent to all terms of such subcontracts. While Paragraph 9 provides that Fidelity "shall not be liable to [PSU], Claimants or others for obligations of [Ionadi] that are unrelated to the Construction Contract" and that PSU "shall not be liable for payment of any costs or expenses of any Claimant" under the Payment Bond, it does not follow from these provisions that Fidelity shall be liable for all of Ionadi's obligations related to the Construction Contract or that Fidelity will be liable for payment of claimants' costs or expenses. (Payment Bond, 10/29/2008, at 5, ¶ 9.) Moreover, Paragraph 10 provides that Fidelity "waives notice of any change, including changes of time, to the Construction Contract or to related subcontracts." (*Id.* at 5, ¶ 10.) This provision is insufficient to conclude that Fidelity incorporated the Subcontract by reference or that Fidelity assented to all terms of all related subcontracts, including subcontracts not yet in existence at the time the Payment Bond was executed. My conclusions in this regard are bolstered by the other provisions of the Payment Bond discussed above, which, when read in context and as a whole, indicate that the Construction Contract is the only contract incorporated by reference into the Payment Bond, that Fidelity is not obligated to arbitrate or be bound by an arbitration award, and that Fidelity is not required to pay attorneys' fees and interest as may be provided for in related subcontracts.

In *Fort Pitt Bridge Works*, the surety bond provision at issue expressly permitted subcontractors to bring suit on the bond "[f]or such sum or sums as may be justly due him," which, absent limiting language, included the interest at issue. *Fort Pitt Bridge Works*, 240 A.2d at 494-95 ("If the surety had wished to curtail the amount of interest which would accrue without the surety's knowledge, the surety could easily have inserted the requirement of notice of the principal's default bond."). As pointed out by Fidelity, the Payment Bond language differs from the language at issue in *Fort Pitt Bridge Works*. Here, Fidelity expressly rendered itself "jointly and severally" liable only for the payment of "labor, materials and equipment," which liability was also: (1) expressly limited by the definition of those terms as provided in Section 15.1 of the Payment Bond—a definition that did not include attorneys' fees and contractual interest—and (2) discharged upon Ionadi's payment to subcontractors such as Eastern for "all sums due" to them *by Ionadi*. In other words, the Payment Bond included limiting language akin to that which was missing in *Fort Pitt Bridge Works* and suggested by the Court for purposes of curtailing the surety's liability.

Accordingly, in contrast to the Majority, I would decline to equate Fidelity's obligation to pay for "labor, materials and equipment" upon Ionadi's failure to pay "all sums due" to subcontractors with an obligation on the part of Fidelity itself to pay for "all sums due" to subcontractors upon Ionadi's default in paying the same. In doing so, I reiterate that "the obligation of a bond cannot be extended beyond the plain import of the words used" and "[o]bligations not imposed by the terms of the bond cannot be created by judicial construction or interpretation which extends the terms beyond their normal meaning." *Commonwealth, to Use of Pa. Mfrs.' Ass'n Cas. Ins. Co.*, 50 A.2d at 212; *see also Thommen*, 153 A. at 753 ("A contract of suretyship[ is] only enforced according to its strict terms []and liability is not to be extended by implication[].""). Consequently, I would

hold that Fidelity is not obligated to pay the attorneys' fees and contractual interest in question.[4]

Based on the foregoing, I would affirm the Superior Court's judgment to the extent that it held that Eastern's insurance bad faith claim under Section 8371 of the Judicial Code was not cognizable against Fidelity, as surety. I would reverse the Superior Court's judgment insofar as it held that the Ionadi Award was conclusive and binding upon Fidelity and that Eastern was entitled to collect attorneys' fees and interest under the Subcontract and Payment Bond. Notably, in its cross-appeal in the Superior Court, Fidelity claimed that "the trial court erred in interpreting the Subcontract for steel reinforcing material installation services to permit Eastern to recover payment for quantities of this material without introducing evidence of 'actual bar weights as shipped.'" *Eastern Steel Constructors, Inc. v. Int'l Fid. Ins. Co.*, 282 A.3d 827, 965 (Pa. Super. 2022). Because the Superior Court found that the Ionadi Award was conclusive and binding on Fidelity and that Fidelity's issue was addressed in the arbitration, the Superior Court concluded that the issue was moot, as Fidelity was "not entitled to retry this issue in Eastern's

---

[4] The Majority concludes that the Superior Court correctly disposed of the attorneys' fees and interest issue insofar as the Superior Court held that Eastern was entitled to collect: (1) the attorneys' fees incurred in connection with its action against Ionadi and included as part of the Ionadi Award; and (2) prejudgment interest as calculated at the 1.5% per month elevated rate provided in the Subcontract and included in the Ionadi Award. The Majority explains that the Superior Court was correct in concluding that, in connection with its pursuit of relief against Fidelity in the trial court, Eastern is not entitled to collect attorneys' fees and may only collect prejudgment interest at the statutory rate of 6% per year from the date of the arbitration award, given that the arbitration award is conclusive and binding on Fidelity and represents a definite sum.

I agree that Eastern is not entitled to attorneys' fees incurred in suing Fidelity in the trial court. Because I disagree that the arbitration award is binding and conclusive on Fidelity, I would not conclude that Eastern is entitled to prejudgment interest at the 6% per year statutory rate from the date of the arbitration award. I, thus, would remand this matter for the Superior Court to reconsider the issue of interest along with Fidelity's cross-appeal as described below, if necessary.

separate suit to enforce [Fidelity's] surety obligation." *Id.* at 966. As I would determine that the Superior Court erred in concluding that the Ionadi Award is conclusive and binding on Fidelity, I would remand this matter to the Superior Court to consider the merits of Fidelity's cross-appeal.

Justice Donohue joins this concurring and dissenting opinion.